Hakif NAMANI, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (A. DUIE PYLE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 8, 2011.

Decided Dec. 6, 2011.

Stuart A. Winegrad, Philadelphia, for petitioner.

Ryan T. McNicholas, Paoli, for respondent A. Duie Pyle.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Hakif Namani (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision denying Claimant's Claim Petition, Reinstatement Petition, and Review Petition (jointly, Petitions). Claimant argues that his medical expert's testimony, along with other evidence, was sufficient to warrant a reinstatement of his benefits and/or a modification of the notice of compensation payable (NCP) to include additional injuries.[1]

Claimant suffered a work-related injury on December 23, 2004, for which he received workers' compensation benefits pursuant to a NCP. (WCJ Decision, November 29, 2006 (November 2006 Decision) Findings of Fact (November 2006 FOF) ¶ 1, Reproduced Record (R.R.) at 3a.) Claimant's injury was described as "left arm and left hand contusions." (November 2006 FOF ¶ 2, R.R. at 3a.) By decision and order circulated November 29, 2006, the WCJ granted Employer's Termination Petition and terminated Claimant's benefits effective June 21, 2005. (November 2006 Decision, R.R. at 1a–8a.) Claimant appealed the November 29, 2006 Order to the Board, which affirmed. (Board Decision and Order, August 22, 2007, R.R. at 10a–17a.) Upon further appeal, this Court affirmed the Board's Order. (Namani v. Workers' Compensation Appeal Board (A. Duie Pyle) (Pa.Cmwlth., No. 1772 C.D. 2007, filed December 21, 2007), R.R. at 18a–28a.)

---

1. Claimant does not present any arguments with respect to the denial of his Claim Petition.

On November 11, 2008, Claimant filed a Reinstatement Petition alleging a worsening of his condition. (Reinstatement Petition, November 11, 2008, Certified Record (C.R.).) On November 25, 2008, Claimant filed a Claim Petition alleging that he suffered additional work-related injuries on December 23, 2004, in the nature of cervical radiculopathy, cervical disc herniations at C5–6 and C6–7, cervical spondylosis, and complex regional pain syndrome. (Claim Petition, November 25, 2008, C.R.) Claimant alleged further that he neither knew nor should have known of these diagnoses until February 6, 2008, and sought total disability benefits from that date. (Claim Petition, C.R.) On February 13, 2009, Claimant filed a Review Petition seeking to correct the description of his December 23, 2004 work-related injury to include the following additional injuries: "cervical radiculopathy, cervical disc herniations at C5–6 and C6–7, cervical spondylosis, and complex regional pain syndrome resulting in Claimant undergoing C5–6 and C6–7 anterior cervical discectomies and fusion on November 24, 2008." (Review Petition, February 13, 2009, C.R.) Employer filed timely Answers to Claimant's Petitions denying the material allegations contained therein. (Answer, November 24, 2008, C.R.; Answer, December 5, 2008, C.R.; Answer, March 4, 2009, C.R.)

Claimant's Petitions were consolidated and hearings ensued before the WCJ. In support of the Petitions, Claimant presented the deposition testimony of Andrew Freese, M.D., Ph.D., and testified on his own behalf. In opposition, Employer presented the deposition testimony of Francis Kralick, D.O., and Claimant's deposition testimony.

By Decision and Order circulated April 27, 2010, the WCJ denied and dismissed Claimant's Petitions. The WCJ found that Dr. Freese's testimony and opinions on causation were legally insufficient because Dr. Freese was unaware of, and failed to address, the WCJ's November 2006 Decision and Order granting Employer's Termination Petition and terminating Claimant's benefits as of June 21, 2005. (WCJ Decision, April 27, 2010, (April 2010 Decision) Findings of Fact (April 2010 FOF) ¶ 3.) The WCJ determined that the salient fact of Claimant's full recovery, while not a total bar to further relief in the proper circumstances, was a relevant factor to be considered and explained by Dr. Freese. (April 2010 FOF ¶ 3.) The WCJ found that Dr. Freese's opinion, that Claimant, some three and a half years after the December 23, 2004 work-related injury, had sustained herniated cervical discs from the work-related injury, could not stand without any consideration to the previous determination of full recovery. (April 2010 FOF ¶ 3.)

■ The WCJ found further that Dr. Freese implicated a cervical injury as stemming from the December 23, 2004 work-related injury based on, in part, a January 2005 EMG study, which was performed within a month of the work-related injury. (April 2010 FOF ¶ 4.) The WCJ determined, however, that this fact was available to Claimant's medical expert at the time of the proceedings on the Termination Petition. (April 2010 FOF ¶ 4.) The WCJ pointed out that Dr. Freese challenged the medical work-up, which was initially undertaken after the December 23, 2004 work-related injury, and that Dr. Freese's opinions presented new and different medical reasons in support of Claimant's Petitions. (April 2010 FOF ¶ 4.) The WCJ found that: (1) Dr. Freese's opinions could have been presented earlier on proper medical work-up in the first instance in that the medical information was then available; and (2) Claimant was actually attempting to re-litigate the earli-

er termination proceedings without comment as to the impact of the earlier decision that Claimant was fully recovered from his work-related injury. (April 2010 FOF ¶ 4.) Accordingly, the WCJ denied Claimant's Petitions. Claimant appealed the WCJ's April 2010 Order and, upon review, the Board affirmed. (Board Opinion and Order, March 4, 2011.) This appeal followed.[2]

In support of this appeal, Claimant argues that his workers' compensation benefits should have been reinstated based on the November 2006 Decision adjudicating Employer's Termination Petition, which was introduced into evidence, and his medical evidence establishing a disability causally related to the work injury. Claimant contends that there is no authority that mandates that a medical expert specifically comment on a judicially determined date of termination. Claimant argues that Dr. Freese credibly explained that the cervical components of Claimant's work-related injury were not adequately identified by Claimant's prior treating physicians as shown by the January 2005 EMG, which revealed a radiculopathy consistent with a recent injury. Finally, Claimant contends that there was no finding by the WCJ or the Board that Dr. Freese's testimony was not credible.

 Pursuant to Section 413(a) of the Workers' Compensation Act (Act),[3] a WCJ may reinstate a claimant's workers' compensation benefits upon proof that the claimant's disability has increased or recurred. "A claimant seeking reinstatement of benefits following a termination carries a heavy burden because the claim-

ant has been adjudicated to be fully recovered." *National Fiberstock Corporation (Greater New York Mutual Insurance Company) v. Workers' Compensation Appeal Board (Grahl)*, 955 A.2d 1057, 1062 (Pa.Cmwlth.2008). In order to prevail on a reinstatement petition after workers' compensation benefits have been terminated, a claimant must establish that his disability "has increased or recurred since the prior decision and that h[is] physical condition has changed in some manner." *Taylor v. Workers' Compensation Appeal Board (Servistar Corporation)*, 883 A.2d 710, 713 (Pa.Cmwlth.2005). The claimant must prove a change in his physical condition by " 'precise and credible evidence of a more definite and specific nature than that upon which initial compensation was based' " and the change must be shown to have occurred after the date of the claimant's total physical recovery. *National Fiberstock Corporation*, 955 A.2d at 1062 (quoting *Simeone v. Workmen's Compensation Appeal Board (United Parcel Service)*, 135 Pa.Cmwlth.356, 580 A.2d 926, 929 n.5 (1990)).

 "The question of the competency of evidence is one of law and fully subject to our review." *Taylor*, 883 A.2d at 713. "Where an expert's opinion is based on an assumption that is contrary to the established facts of record, that opinion is [incompetent]." *Id.* However, "[a] medical expert's opinion is not rendered incompetent unless it is *solely* based on inaccurate or false information." *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 396 (Pa.Cmwlth.2001) (emphasis in original). "[I]t is well established that the

---

**2.** "This Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated." *Peters Township School District v. Workers' Compen-*

*sation Appeal Board (Anthony)*, 945 A.2d 805, 810 n. 8 (Pa.Cmwlth.2008).

**3.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

opinion of a medical expert must be viewed *as a whole,* and that inaccurate information will not defeat that opinion unless it is dependent on those inaccuracies." *Id.* (emphasis in original).

■ Herein, the WCJ determined that Dr. Freese's opinions on causation were legally insufficient because the doctor was unaware of and, therefore, did not even consider or address the November 2006 Decision granting Employer's Termination Petition and terminating Claimant's workers' compensation benefits. (April 2010 FOF ¶ 3.) We agree. A review of Dr. Freese's entire deposition testimony reveals that Dr. Freese did not address or consider the termination of Claimant's workers' compensation benefits due to a total recovery of his work-related left hand and left arm contusions effective June 21, 2005. (Freese Dep., R.R. at 32a–104a.) Because Dr. Freese did not offer any testimony with regard to Claimant's full recovery of the accepted work-related injuries, nowhere in Dr. Freese's testimony does he relate that Claimant's physical condition has changed in some manner since the termination of Claimant's benefits. (Freese Dep., R.R. at 32a–104a.) Instead, Dr. Freese opines that Claimant not only suffered hand and arm injuries, but that he suffered undiagnosed cervical injuries on the date of his work-related December 23, 2004 injury. (Freese Dep. at 19, 23–24, 28–29, R.R. at 47a, 51a–52a, 56a–57a.) Dr. Freese specifically testified that it was clear that a nerve compression in the cervical spine can manifest itself with significant hand symptomatology and that there was no question that a significant component of Claimant's hand symptoms were related to his cervical spine injuries. (Freese Dep. at 28–29, R.R. at 56a–57a.) Thus, Dr. Freese essentially testified that there has been no change in Claimant's condition since December 23, 2004, which

contradicts the WCJ's November 2006 Decision granting Employer's Termination Petition based on a finding of full recovery. Accordingly, Dr. Freese's opinions on causation are contrary to the established facts of record and are based on inaccuracies. *See National Fiberstock Corporation,* 955 A.2d at 1063 ("[A] medical expert who bases his or her opinion on a factual assumption that is inconsistent with a previously decided medical fact may be ruled legally incompetent."). As such, the WCJ did not err by finding Dr. Freese's opinions on causation legally insufficient to support a reinstatement of Claimant's workers' compensation benefits.

Claimant argues next that Dr. Freese's testimony supports a finding that the NCP was materially incorrect at the time it was issued. Claimant contends that the results of the January 2005 EMG show that he suffered cervical disc ailments that were related to his December 23, 2004 work-related injury. Claimant points out that Dr. Freese opined that only a partial cervical work-up was performed on Claimant at the time of his work-related injury and that, because his treating physician focused on his hand, his cervical injuries were not identified as the source of his dysfunction. Thus, citing *Taylor* and *National Fiberstock Corporation,* Claimant argues that collateral estoppel is not a bar to his assertion that he suffered a cervical injury related to the December 23, 2004 work-related injury because: (1) he is asserting a disability in a different time frame; (2) the evidence of the cervical component of his work-related injury was not available prior to the termination of his benefits because his treating physicians did not adequately identify their existence; (3) there was no prior decision regarding the compensability of a cervical injury; and (4) there was no prior review petition adjudicated in this matter.

The WCJ in this matter found that Claimant was attempting to re-litigate the termination proceedings by presenting medical testimony that relied, in part, upon a January 2005 EMG that shows a mild to moderate root irritation at C6–7. (April 2010 FOF ¶ 4.) The WCJ found that the results of the January 2005 EMG were available to Claimant during the prior termination proceedings and it was not appropriate to pursue his claim in a "piece-meal" fashion. (FOF ¶ 4.) Upon review, we conclude that the WCJ's determination is correct.[4]

As explained by this Court:

[T]echnical res judicata and collateral estoppel are both encompassed within the parent doctrine of res judicata, which "prevents the relitigation of claims and issues in subsequent proceedings." *Henion* [*v. Workers' Compensation Appeal Board (Firpo & Sons, Inc.)* ], 776 A.2d [362,] 365 [ (Pa.Cmwlth. 2001) ].

Under the doctrine of technical res judicata, often referred to as claim preclusion, "when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded." *Id.* In order for technical res judicata to apply, there must be: "(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." *Id.* at 366. Technical res judicata may be applied to bar "claims that were actually litigated as well as those matters that *should have been* litigated." *Id.* (emphasis added). "Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings." *Id.*

The doctrine of collateral estoppel, often referred to as issue preclusion, "is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously litigated." *Pucci v. Workers' Compensation Appeal Board (Woodville State Hosp.),* 707 A.2d 646, 647–48 (Pa. Cmwlth.1998). Collateral estoppel applies where:

(1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted

---

4. Pursuant to Section 413(a) of the Act, "[a] workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable ... or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable ... was in any material respect incorrect." 77 P.S. § 771. A modification of an NCP may occur at any time where there is a true mistake of fact or law which renders the NCP materially incorrect. *Birmingham Fire Insurance Company v. Workmen's Compensation Appeal Board (Kennedy),* 657 A.2d 96, 99 (Pa.Cmwlth. 1995). It is the burden of the party seeking modification of the NCP to prove that a material mistake of fact or law was made at the time the NCP was issued. *Id.* "An NCP is materially incorrect if the accepted injury fails to include all of the injuries that the claimant suffered in the work incident." *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill),* 932 A.2d 346, 349 (Pa.Cmwlth.2007). Where there is no obvious connection between the accepted work-related injury and any alleged additional work-related injuries, the burden is on the claimant to prove causation with respect to amending the description of the injury contained in the NCP. *Huddy v. Workers' Compensation Appeal Board (U.S. Air),* 905 A.2d 589, 593 (Pa.Cmwlth.2006). To meet that burden, the claimant must present unequivocal medical evidence of causation. *City of Pittsburgh v. Workers' Compensation Appeal Board (Wilson),* 11 A.3d 1071, 1075 (Pa.Cmwlth.2011).

was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the judgment.

*Id.* at 648.

*Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949, 954–55 (Pa.Cmwlth.2008). This Court further held that "Section 413(a) of the Act must be applied in a manner that is consistent with the doctrines of technical res judicata and collateral estoppel" to help "ensure that benefits are provided to injured workers in a 'quick and certain' manner." *Id.* at 956 (citing *McCarthy v. Township of McCandless*, 7 Pa.Cmwlth. 611, 300 A.2d 815, 819 (1973)).[5]

 Herein, the doctrine of technical res judicata applies and precludes the amendment/modification of the NCP to include the alleged additional cervical injuries.[6] The results of the January 2005 EMG show a mild to moderate root irritation at C6–7 and these results were available to Claimant's medical expert prior to the filing of Employer's Termination Petition on August 29, 2005.[7] Therefore, the issue of whether Claimant suffered a cervical injury as a result of his December 23, 2004 work-related accident could have been litigated during the termination proceedings. As such, when Employer sought to terminate Claimant's benefits based on full recovery of the injuries to Claimant's left hand and arm, Claimant, at that time, should have filed a petition to modify the description of his work-related injury or requested that the WCJ, during the course of the termination proceedings, amend the NCP to include a cervical injury.[8] Claim-

5. In *Weney*, the claimant filed a review petition on March 27, 2006 to include additional left shoulder injuries to the NCP. *Weney*, 960 A.2d at 951. The claimant's first review petition was granted by the WCJ on May 19, 2006. *Id.* On May 30, 2006, the claimant filed a second review petition seeking to further amend the NCP to include cervical injuries. *Id.* The issue before this Court was whether the claimant's second review petition was barred by the doctrines of technical res judicata and/or collateral estoppel. *Id.* This Court held that technical res judicata barred the claimant's second review petition because, "[a]lthough Claimant did not actually litigate the specific issue of his neck or cervical spine injury during the earlier proceedings on his [first review petition], the record evidence clearly establishes that he should have done so." *Id.* at 955.

6. This Court specifically explained in *Weney* that:

The purpose behind the Act "is to provide quick and certain benefits to employees of the Commonwealth who suffer from work-related injuries." *Ramich v. Workers' Compensation Appeal Board (Schatz Elec., Inc.)*, 564 Pa. 656, 665, 770 A.2d 318, 323 (2001) (emphasis added). We believe that application of the doctrine of technical res judicata

here will help to ensure that benefits are provided to injured workers in a "quick and certain" manner. *See McCarthy v. Township of McCandless*, [7 Pa.Cmwlth. 611,] 300 A.2d 815, 819 (Pa.Cmwlth.1973) (recognizing that the doctrines of technical res judicata and collateral estoppel serve as important means of promoting certainty and efficiency). Application of the doctrine of technical res judicata will also help to protect the integrity of the workers' compensation system. That is, if we were to allow amendments to notices of compensation payable pursuant to Section 413(a) in situations such as this one, the result would be that litigants could file piece-meal review petitions without any justification for doing so, thereby requiring others to continually waste time and resources defending against issues that should have been raised in earlier proceedings.

*Weney*, 960 A.2d at 956.

7. *See* Board Op. at 1, August 22, 2007, R.R. at 11a.

8. In *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 217 (Pa.Cmwlth.2008), this Court explained as follows:

ant did not, and may not seek to correct that oversight now.

Moreover, Claimant's argument, based on *Taylor* and *National Fiberstock Corporation,* that his claims are not barred by collateral estoppel because the evidence demonstrated a disability in a different time frame, is misplaced. In *Taylor* and *National Fiberstock Corporation,* the issue was whether a claimant's reinstatement petition, based on a recurrence of disability after a termination of benefits, was barred by collateral estoppel. This Court held in both cases that the claimants' reinstatement petitions were not barred by collateral estoppel because the ultimate and controlling issue decided in the termination proceedings was not identical to the ultimate and controlling issue in the reinstatement proceedings. *Taylor,* 883 A.2d at 714; *National Fiberstock Corporation,* 955 A.2d at 1062. Specifically, the reinstatement and termination proceedings involved factual questions about each claimant's conditions at two unrelated time periods. *Id.* In the instant matter, Claimant contends that he has suffered from the alleged cervical injuries from the time of the December 23, 2004 work-related incident; therefore, Claimant is not actually seeking reinstatement of benefits based on a recurrence of disability during a different time period. As we previously stated, Claimant's Petitions are barred by technical res judicata because he *should*

*have litigated* the issue of his cervical injuries during the termination proceedings.

Accordingly, the Board's Order is affirmed.

### ORDER

**NOW,** December 6, 2011, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **AFFIRMED.**

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority holds that the doctrine of technical res judicata bars Hakif Namani's (Claimant) Review Petition, which Claimant filed to amend the notice of compensation payable (NCP) to include additional injuries, because Claimant could have litigated whether he sustained additional injuries during proceedings on the Termination Petition filed by Claimant's employer. For the following reasons, I cannot agree that technical res judicata applies.

The majority's own explanation of technical res judicata is that there must be: (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. (Majority Op. at 856–57) (quoting *Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.,* 960 A.2d 949, 954 (Pa.

---

Under Section 413(a) of the Act, an NCP can be amended in two ways. One way is for a claimant who is claiming benefits should not be terminated based on injuries that are related to, but distinct from a recognized injury, to file a petition to modify the NCP pursuant to 77 P.S. § 772, which is treated the same "as if such petition were an original claim petition." The second way to modify an NCP does not require a petition to modify be filed; rather, a WCJ is authorized to modify an NCP in the course

of proceedings under any petition pending if it is established [that] the NCP was materially incorrect when issued and the claimant, who has the burden, establishes she suffered additional work-related injuries. However, the WCJ does not have the authority under this approach to include injuries that developed over time as a result of the injury; instead, only injuries that existed at the time the NCP was issued may be addressed.

(Citations and footnote omitted.)

Cmwlth.2008))). When all four elements are present, technical res judicata bars matters that should have been raised in the prior proceeding. *Id.*

The first two elements are missing in this case. Claimant filed a Review Petition seeking to correct the NCP to include additional injuries. Claimant's employer filed the Termination Petition to end Claimant's benefits due to his full recovery from the injury described in the NCP. These are different causes of action, seeking different things. Thus, technical res judicata does not bar Claimant's Review Petition.

Accordingly, I would reverse.