**CITY OF PITTSBURGH and UPMC Benefit Management Services, Inc., Petitioners**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (WILSON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 21, 2010.

Decided Jan. 20, 2011.

---

Patrick A. Sheldon, Pittsburgh, for petitioner, City of Pittsburgh.

Brian T. Kadlubek, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.[1]

The City of Pittsburgh and UPMC Benefit Management Services, Inc. (Employer) petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) that expanded Darnella Wilson's (Claimant) work-related injury to include an aggravation of her pre-existing cervical disc disease. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that testimony of Employer's medical expert supported a finding that Claimant suffered an aggravation. Concluding that the testimony in question cannot be so construed, we reverse.

Claimant worked for Employer as a paramedic. On December 22, 2005, Claimant was injured while helping to lift a 600–pound patient on a stretcher. Employer issued a Notice of Temporary Compensation Payable (NTCP) describing the injury as a thoracic strain and providing for payment of total disability benefits. The NTCP subsequently converted to a Notice of Compensation Payable (NCP).

When Employer received medical evidence of Claimant's full recovery, it filed a petition to terminate her benefits as of April 11, 2006. Claimant filed an answer denying that she was fully recovered. She also filed a review petition seeking to expand the work injury to include a cervical strain, aggravation of a pre-existing degenerative cervical condition, and bilateral rotator cuff tears. Employer voluntarily issued a "corrected" NCP adding a cervical muscle strain to the injury description, but it denied that Claimant sustained a work-

---

1. The case was reassigned to this author on October 12, 2010.

related aggravation of her cervical disc disease. It also denied that she suffered rotator cuff tears in the work incident.

The termination and review petitions were consolidated, and a hearing was held before the WCJ. Claimant testified in support of her review petition and in opposition to Employer's termination petition. She stated that her work injury caused pain in her upper back and neck; numbness, tingling and pain in her arms; and "heaviness" in her shoulders. Claimant underwent right shoulder surgery in November 2007, but she continued to have problems on the left side. Her own physician had not released her to return to work.

Claimant offered the deposition testimony of Glenn Buterbaugh, M.D., a board certified orthopedic surgeon, who has treated Claimant for shoulder problems since October 3, 2007. He has not treated Claimant's neck. Dr. Buterbaugh diagnosed Claimant with bilateral rotator cuff tears that he opined were caused by her work injury. He explained that Claimant's complaints of pain in her upper back, neck and shoulder blades were consistent with a rotator cuff injury. Dr. Buterbaugh surgically repaired the right shoulder in November 2007 and the left shoulder in May 2008. He opined that with rehabilitation Claimant would soon be able to perform light-duty work and, thereafter, to return to her regular job as a paramedic.

Employer offered the deposition testimony of Marc Adelsheimer, M.D., who is board certified in physical medicine and rehabilitation and also in pain medicine. Dr. Adelsheimer treated Claimant from February 2006 to April 2006 and diagnosed her work injury as thoracic and cervical strains. A cervical MRI revealed spondylosis with some minor disc bulges, which was a pre-existing condition not related to the work injury.[2] When he learned of the spondylosis, Dr. Adelsheimer amended his diagnosis, calling it a thoracic and cervical strain superimposed on spondylosis. Dr. Adelsheimer explained that by "superimposed," he meant that Claimant's disc degeneration and work-related muscle strain were located in the same area of the body, i.e., the neck. As of April 11, 2006, Claimant's physical examination was completely normal, and Dr. Adelsheimer opined that she was fully recovered from her work-related injury. He released Claimant from care and executed an affidavit of recovery.

One year later, on May 10, 2007, at Employer's request, Dr. Adelsheimer performed an independent medical examination (IME) of Claimant, at which she reported pain in her neck, shoulders and arms. Dr. Adelsheimer reviewed additional cervical radiographic tests that confirmed her non-work related cervical disc disease. Again, Claimant's physical examination was normal. Dr. Adelsheimer continued to believe that the work injury was a cervical and thoracic muscle strain, which had resolved. He executed a second affidavit of recovery. Dr. Adelsheimer testified that the muscle strain neither caused the cervical disc disease nor aggravated that condition. Dr. Adelsheimer explained that he has never seen a strain cause an aggravation of a pre-existing degenerative condition; he opined that an aggravation would require more serious trauma. Finally, Dr. Adelsheimer did not believe that the work incident caused rotator cuff tears.

On cross-examination, Dr. Adelsheimer acknowledged that he authored a report on the date of the May 2007 IME, which he

**2.** Spondylosis is "any lesion of the spine of a degenerative nature." STEDMAN'S MEDICAL DICTIONARY at 1678 (27th ed.2000).

provided to Employer's counsel. He testified that this report contained a sentence that read:

I do feel that this work injury caused an aggravation of the preexisting degenerative condition.

Reproduced Record at 202a (R.R. ——). Dr. Adelsheimer testified that this sentence was erroneous because the word "not" should have appeared between "do" and "feel." He further explained that Employer's counsel brought the apparent typo to his attention. After re-sending his report, Dr. Adelsheimer produced a corrected report on July 2, 2007, with a cover letter explaining that the enclosed report corrected a typographical error in the May report. The July report was identical to the May report, with the addition of one word: "not." Accordingly, the July report stated, in its corrected form, as follows:

I do *not* feel that this work injury caused an aggravation of the preexisting degenerative condition.

R.R. 229a (emphasis added).

Dr. Adelsheimer testified that Employer's counsel did not ask him to change his medical opinion and did not influence his opinion; she merely pointed out what appeared to be a mistake. Dr. Adelsheimer explained as follows:

[T]he purpose of testifying today under oath is to tell you now what my true opinions were, and yes, originally that was stated ... that I did feel it was an aggravation. But *my true opinion is what I'm stating under oath today is that I did not feel there was an aggravation, and that was just a mistake on my part.*

R.R. 207a–208a (emphasis added).

Dr. Adelsheimer's July 2, 2007, letter and his corrected IME report were at- tached to his deposition as exhibits. His original and uncorrected report was not offered into evidence.

The WCJ credited Claimant's testimony that she suffered the disabling pain in her neck, upper back and both arms as a result of the work incident. The WCJ credited Dr. Buterbaugh's opinion that the work injury included bilateral rotator cuff tears and that Claimant had not fully recovered. The WCJ rejected the contrary opinion of Dr. Adelsheimer.[3] The WCJ found, on the basis of Dr. Adelsheimer's May IME report, that the December 2005 work accident had aggravated Claimant's pre-existing cervical degenerative condition. The WCJ reasoned as follows:

Dr. Adelsheimer opined ... before he discussed the issue with [Employer's] counsel and changed the report, that the work accident caused an aggravation of the claimant's degenerative dis[c] disease in the neck. This opinion is consistent with [h]is original [diagnosis], *i.e.* a cervical strain superimposed on the degenerative condition. *Looking at his original diagnosis and his original narrative report before the change, I find that there is sufficient evidence to find that the claimant suffered an aggravation of her cervical degenerative condition in the work accident* and that the aggravation remained after April of 2006.

WCJ Decision, May 5, 2009, at 15 (emphasis added).

▬▬▬ The WCJ amended the NCP to add the aggravation and rotator cuff tears to the description of Claimant's work injury. Further, the WCJ concluded that Em-

---

**3.** The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v.* *Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383, 385 (Pa. Cmwlth.1995).

ployer failed to prove that Claimant had fully recovered from all of her work injuries, including the aggravation, and denied the termination petition. Employer appealed and the Board affirmed. Employer now petitions for this Court's review.[4]

■ On appeal, Employer raises one issue for our consideration. Employer argues that the Board erred in affirming the WCJ's addition of aggravation of Claimant's pre-existing cervical degenerative disc disease to the NCP.[5] Employer contends that there is no competent evidence to support the WCJ's finding that Claimant suffered an aggravation of her cervical disease. We agree.

■ Section 413(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 771, authorizes a WCJ to amend an NCP shown to be incorrect.[6] It is the burden of the party seeking to correct the NCP to prove that it was materially incorrect when it was issued. *Anderson v. Workers' Compensation Appeal Board (Pennsylvania Hospital),* 830 A.2d 636, 641 (Pa.Cmwlth. 2003); *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill),* 601 Pa. 524, 533, 975 A.2d 577, 582 (2009). Unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work inci-

dent. *Cromie v. Workmen's Compensation Appeal Board (Anchor Hocking Corporation),* 144 Pa.Cmwlth.37, 600 A.2d 677, 679 (1991). Whether medical evidence is equivocal is determined by reviewing the entire testimony of the medical witness, not just one sentence. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education),* 508 Pa. 360, 366, 498 A.2d 800, 803 (1985). Where a medical expert recants his opinion, then his testimony is equivocal and cannot support a finding. *Moore v. Workers' Compensation Appeal Board (American Sintered Technologies, Inc.),* 759 A.2d 945, 949 (Pa.Cmwlth.2000).

Here, Claimant offered the testimony of Dr. Buterbaugh, who did not treat or render any opinion with respect to Claimant's neck. To amend the NCP, the WCJ relied solely on Employer's medical expert, Dr. Adelsheimer. Specifically, the WCJ relied upon what she called Dr. Adelsheimer's "original" report, in which he stated that "he did feel" Claimant suffered an aggravation. Employer argues that the WCJ relied upon a typographical error, which cannot be competent evidence. Even if the uncorrected sentence were deemed to represent Dr. Adelsheimer's actual opinion, that opinion was recanted. Thus, the so-called "original" opinion is equivocal and, as such, worthless. Claimant argues

---

4. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser),* 114 Pa.Cmwlth.382, 539 A.2d 11, 14 (1988).

5. Employer does not appeal the denial of its termination petition or the addition of bilateral rotator cuff tears to the description of the work injury.

6. Section 413(a) states, in relevant part:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement . . . if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771.

that the WCJ, as the sole arbiter of credibility, was empowered to reject Dr. Adelsheimer's "corrected" opinion and to rely, instead, on the first recanted opinion. Claimant is wrong. The evidence issue is one of credibility, not competency, and the WCJ erred in using Dr. Adelsheimer's uncorrected May 2007 medical report.

First, under oath, Dr. Adelsheimer stated clearly and repeatedly that Claimant's work injury was a thoracic and cervical strain and did *not* include an aggravation of her pre-existing cervical disc disease. He explained that his diagnosis of cervical strain superimposed on the degenerative condition meant only that the strain and degeneration each took place in the neck area. He did not intend the word "superimposed" to mean or suggest an aggravation.

Second, reading Dr. Adelsheimer's IME report in its entirety makes it clear that Dr. Adelsheimer never expressed an opinion that Claimant suffered an aggravation. Dr. Adelsheimer's report, which is five pages long, details Claimant's medical history; her medical records; her symptoms; and the results of her physical examination. The report states a diagnosis of "[c]ervical and thoracic strain, resolved" and reports "[p]re-existing history of cervical degenerative disease, non-work-related." R.R. 228a. The report then states:

> [Claimant] is a 49–year–old female who suffered a cervical and thoracic strain as a result of a work injury which took place on December 22, 2005. *I continue to feel that her work injury has fully resolved.* I have once again signed a second Affidavit of Recovery for her work injury. *I do not feel that any further treatment is necessary.*

Her workup has revealed degenerative disease which was present on her initial MRI and continues to be present on followup MRIs. *I do not feel that the degenerative disease was in any way causally related to the December 22, 2005 work injury. I do not feel that this work injury caused an aggravation of the preexisting degenerative condition.* R.R. 228a–229a (emphasis added). There is simply no way to read the above-quoted provisions and conclude that Dr. Adelsheimer intended to state that Claimant sustained an aggravation.

What the WCJ calls Dr. Adelsheimer's so-called "original" opinion is not consistent with anything else in his report; his two affidavits of recovery; or his testimony. The mistake in the May 2007 report was corrected with a new report and in Dr. Adelsheimer's testimony. Mistakes in medical reports are routinely corrected at deposition. *See, e.g., McGraw Edison Company v. Workmen's Compensation Appeal Board (Buechel, Jr.),* 96 Pa. Cmwlth. 495, 507 A.2d 1304 (1986). Given the overwhelming evidence that Dr. Adelsheimer's true opinion was that Claimant did not suffer an aggravation, the WCJ's focus on one sentence and refusal to accept the correction of that sentence "borders on whim." *Lewis,* 508 Pa. at 368, 498 A.2d at 804. It is an example of a WCJ taking a few words out of context to support a decision, which is impermissible.

■ Third, even if the WCJ believed that Dr. Adelsheimer was coerced into changing his "original" opinion, the WCJ's belief is irrelevant.[7] Dr. Adelsheimer repeatedly recanted his so-called "original" opinion. As a matter of law, a recanted

---

7. It is of no moment that Employer's counsel brought the mistake to Dr. Adelsheimer's attention. There is nothing untoward about a lawyer questioning his expert to get a clarification. Critically, Dr. Adelsheimer testified that counsel in no way influenced his medical opinion or asked him to change that opinion.

opinion is equivocal and, therefore, incompetent to support an award.[8] The WCJ cannot accept an earlier opinion but reject the medical expert's subsequent repudiation of that opinion.

Finally, by basing factual findings on the first, and uncorrected, version of Dr. Adelsheimer's report, which was not admitted into evidence, the WCJ violated the hearsay rule. Dr. Adelsheimer's testimony about his "original" written report, which was not admitted, was hearsay on hearsay. Uncorroborated double hearsay cannot support a factual finding.[9] *Presbyterian SeniorCare v. Unemployment Compensation Board of Review,* 900 A.2d 967, 978 (Pa.Cmwlth.2006). Further, even if the uncorrected report had been admitted into the record, the report itself is hearsay and cannot, standing alone, provide competent evidence to support a finding that Claimant suffered an aggravation of her disc disease. This is why medical reports are followed by deposition testimony. *See, e.g., Tynan v. Workmen's Compensation Appeal Board (Associated Cleaning Consultant and Services, Inc.),* 162 Pa. Cmwlth.393, 639 A.2d 856 (1994) (holding that a medical report must be corroborated by other competent evidence).

Claimant had the burden of proving that her work injury included an aggravation of her pre-existing cervical degenerative disc disease. She failed to do so. She did not provide expert medical evidence. The first version of Dr. Adelsheimer's medical report, later replaced with a July 2, 2007, corrected report, is not competent evidence of the aggravation that Claimant asserts she has suffered.

Accordingly, that portion of the Board's order affirming the WCJ's finding that Claimant suffered an aggravation of her pre-existing cervical degenerative condition is reversed.

## ORDER

AND NOW, this 20th day of January, 2011, the order of the Workers' Compensation Appeal Board dated January 21, 2010, in the above captioned matter is hereby REVERSED with respect to the addition of aggravation of a preexisting degenerative cervical condition to the notice of compensation payable, and AFFIRMED in all other respects.

Judge BUTLER concurs in the result only.

---

8. Using the report to discount Dr. Adelsheimer's competent testimony was error. It is well-settled that a WCJ is not permitted to rely on incompetent evidence to reject competent evidence. *United States Steel Mining Company, LLC v. Workers' Compensation Appeal Board (Sullivan),* 859 A.2d 877, 883–884 (Pa.Cmwlth.2004).

9. These hearsay problems are not solved by treating Dr. Adelsheimer's statements on cross-examination as an admission. He admitted only to failing to proofread the first version of his May 10, 2007, medical report. This has no substantive value with respect to the question of whether Claimant suffered an aggravation. Dr. Adelsheimer was clear in his testimony that his opinion on May 10, 2007, was that Claimant did not suffer an aggravation.